UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| MATTHEW MCQUISTON and | ) | |
| JOANNA MCQUISTON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-1668-LJM-DML |
| | ) | |
| JAMES K. HELMS and | ) | |
| J.B. HUNT TRANSPORT, INC., | ) | |
| Defendant. | ) | |

**ORDER**

This matter comes before the Court on several pretrial motions filed by Plaintiffs,
Matthew McQuiston ("McQuiston") and Joanna McQuiston ("Mrs. McQuiston") (collectively,
"Plaintiffs"), and Defendants, James K. Helms ("Helms") and J.B. Hunt Transport, Inc.
("J.B. Hunt") (collectively, "Defendants").  Plaintiffs' lawsuit stems from an automobile
accident where McQuiston was involved in a collision with a J.B. Hunt semi-tractor and
trailer driven by Helms.  Plaintiffs claim that Helms negligently operated the semi-tractor
and trailer and that, as a result, McQuiston suffered severe personal injuries.  McQuiston
seeks to recover the losses attributable to his injuries and his wife seeks to recover on a
loss of consortium claim.  The parties' pretrial motions (Dkt. Nos. 75, 78, 84, 90, 92, 93 &
109) have been fully briefed and are now ripe for ruling.

1

# I.  PLAINTIFFS' MOTIONS

## A.  MOTION TO EXCLUDE EXPERT TESTIMONY OF CLINE YOUNG

Plaintiffs move the Court to exclude the expert testimony of Cline Young, Ph.D ("Dr. Young") under Federal Rules of Evidence 702 ("Rule 702") and *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579, 592 (1993).

Under Rule 702 and *Daubert* the Court follows a two-prong framework:  (1) the Court must determine whether "the proposed witness would testify to valid scientific, technical, or other specialized knowledge and (2) [the Court must determine whether] his testimony will assist the trier of fact."  *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004) (quotations and citations omitted).  The first prong "of this framework evaluates the reliability of the testimony."  *Id.*  To determine whether Young's opinions are reliable the Court "'must determine whether the expert is qualified in the relevant field and whether the methodology underlying the expert's conclusions is reliable.'"  *Id.* (quoting *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 640 (7th Cir. 2003)).  The Court must "reject "any subjective belief or speculation.'"  *Id.* (quoting *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) (citing *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 614 (7th Cir. 1993)).

Under the second prong, the Court "evaluates the testimony's relevance."  *Id.*  The opinion may assist the trier of fact with any issue involved in the case; the expert need not opine about the ultimate issue.  *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).  An expert may opine as to the hypothetical or probable causes of an event if such testimony would aid the jury.  *Id.* at 718-19.  However, the hypothetical alternative must

itself have an analytically sound basis such that it is more than mere speculation. *Id.* at 719 (citing *DePaepe v. Gen'l Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998)). The Court may not decide if the expert's opinion is correct, rather it must only determine whether the expert's testimony is pertinent to an issue in the case. *Id.*

Plaintiffs take issue with the following opinions of Young:

**1. Mr. McQuiston parked his car so close to the right travel lane that the door could not be fully opened without taking up 16 inches of that lane.** This is an observational opinion based on the position of Mr. McQuiston's car after the accident as shown in a scene photograph and scaling of that photograph.

**2. Mr. McQuiston had available to him a large expanse of shoulder and turf just 36 feet farther west that would have afforded him ample opportunity to exit his vehicle and effect repairs without risk of injury.** This is an observational opinion based on the author's visit to the accident site.

\*   \*   \*

**5. Mr. Helms' truck did not touch Mr. McQuiston's car despite the door being open and apparently taking up 16 inches of the right travel lane.** This is based on the investigating officer finding no contact damage between the two vehicles.

**6. The point of contact between Mr. Helms' tractor and Mr. McQuiston himself is consistent with and supportive of Mr. Helms' claim to have swerved left when Mr. McQuiston entered the right travel lane.** A highway speed collision avoidance maneuver by a tractor with semi-trailer will generate enough lateral acceleration to cause negative offtracking. Negative offtracking is a turning condition under which the farther aft the axle is the farther outside of the path of travel of the front axle it follows. Hence, an object could be avoided by the front of the tractor and still be struck by the side of the tractor during negative offtracking. See ref. 7d,e.

**7. In summary, Mr. McQuiston's selection of a stopping location was faulty and his method of exit from his vehicle failed to yield the right of way to Mr. Helms.**

Defs.' Ex. 9, Dkt. No. 76(10) (emphasis in original).

3

Plaintiffs argue that Opinion Nos. 1 and 5 regarding the position of McQuiston's driver side door are based on inaccurate photographs.  According to Plaintiffs, eyewitness Stephen Green ("Green"), testified that the photographs do not "reflect the position of the driver's door at the time of the collision."  Pls.' Br. at 7.  Green testified that McQuiston had the door pressed up against his body.  *Id.*  As a result, Plaintiffs argue that the Court should exclude Young's testimony regarding Opinion Nos. 1 and 5 because "[e]xpert opinions that are based upon inaccurate photographs cannot be found to possess the 'reliable basis in the knowledge and experience of [the relevant] discipline' required for admission."  Pls.' Br. at 8 (quoting *Kumho Tire v. Carmichael,* 526 U.S. 137, 149 (1999)).

However, as Defendants note, Plaintiffs have mischaracterized Green's testimony. Green did not testify about the position of the door when Helms passed by the car.  Rather, Green testified about the position of the door when Green passed McQuiston.  It is altogether possible that McQuistion completely extended the door after Green passed and, therefore, Plaintiffs' cannot say for sure that Young's opinions are based upon "inaccurate photographs."  Plaintiff's Motion to Exclude Opinion Nos. 1 and 5 is **DENIED**.

Next, Plaintiffs argue that Dr. Young's Opinion No. 6 regarding negative offtracking "is contrary to known vehicle dynamics" and therefore "fails to meet the standard that it have 'reliable basis in the knowledge and experience of [the relevant] discipline."  Pls.' Br. at 8 (quoting *Kumho Tire*, 526 U.S. at 149)).  In support of this argument, Plaintiffs cite their own expert, Dwayne "Red" Owen ("Owen"), who opines that negative offtracking does not occur.

First, as the Court discusses in more detail below, Owen's opinions are excluded

4

under Rule 702 and *Daubert* and, therefore, his opinions regarding the existence of negative offtracking are irrelevant to Dr. Young's ability to testify as an expert. Second, the Court notes that Dr. Young cited two studies to support his conclusion regarding negative offtracking: Fircke, L.B., *Traffic Accident Reconstruction*, Northwestern University Traffic Institute, 1990, ISBN 0-912642-07-6, and Christensen, T.C., Blythe, W., "Offtracking: History, Analysis and Simulation," SAE 2000-01-1465.  *See* Defs.' Ex. 9, Dkt. No. 76(9). In addition, Dr. Young obtained a Masters degree and Ph.D. degree in mechanical engineering and has performed engineering consultation for twenty-seven years.  Based upon the studies on negative offtracking, his experience and educational background, and his personal inspection of the evidence in this case, Dr. Young concluded, "The point of contact between Mr. Helms' tractor and Mr. McQuiston himself is consistent with and supportive of Mr. Helms' claim to have swerved left when Mr. McQuiston entered the right travel lane."  The Court concludes that Dr. Young's opinion regarding negative offtracking is admissible.

Plaintiffs argue that "[D]r. Young's opinions as to the vehicle dynamics involved at the point of impact between the J.B. Hunt semi-tractor and [McQuiston] are not germane to the issues in this case because H[elms]' negligence had already occurred prior to impact."  Pls.' Br. at 9.  As a result, Plaintiffs argue that Dr. Young's opinion regarding the alleged negative offtracking of Helms' tractor is not relevant and will not assist the trier of fact.  The Court disagrees and concludes that any evidence about the efforts Helms made to avoid hitting McQuiston are relevant.

Accordingly, the Court concludes that Dr. Young's opinions regarding negative

offtracking comply with Rule 702 and *Daubert*.  Plaintiffs' Motion to Exclude Dr. Young's testimony regarding Opinion No. 6 is **DENIED**.

Finally, Plaintiffs argue that Dr. Young's Opinion Nos. 2 and 7 should be excluded from testimony because "there is nothing about being an expert in vehicle dynamics that qualifies [D]r. Young to render opinions about whether [McQuiston] was at fault due to the location of where he stopped his car alongside the interstate." Moreover, Plaintiffs contend that the jury does not need expert assistance to make such a determination.  The Court agrees.  Dr. Young's Opinion No. 2 is essentially just a statement of fact regarding the position of McQuiston's car.  There is no need for an expert to testify as to the position of McQuiston's car.  Rather, a fact witness is more than capable of testifying as to the position of McQuiston's car, and the jury is capable of drawing its own conclusions about whether or not that stopping location was "faulty."  Dr. Young's opinions that McQuiston's stopping location was faulty and that McQuiston's "method of exit from his vehicle failed to yield the right of way" do not require special knowledge, training or expertise.  *See* Fed. R. Evid. 702.  Therefore, Plaintiffs' Motion to Exclude Opinion Nos. 2 and 7 is **GRANTED**.

## B.  MOTIONS IN LIMINE

Plaintiffs filed two Motions in Limine.  *See* Dkt. Nos. 90, 93.  The Court considers each Motion in turn.

First, Plaintiffs argue that Defendants' violations of several Indiana statutes designed to avoid the precise hazard that occurred to McQuistion preclude Defendants from raising the affirmative defenses of contributory or comparative negligence and incurred risk.  Plaintiffs assert that the Supreme Court of Indiana has held that "a tortfeasor

6

who had the duty to prevent a specific harm cannot raise the occurrence of that very harm as contributory negligence."  Pls.' Br. at 2 (citing *Sauders v. County of Steuben*, 693 N.E.2d 16 (Ind. 1998)).  Plaintiffs cite several Indiana statutes that impose certain duties on drivers and argue that, because Helms violated those duties, Helms cannot assert affirmative defenses of contributory or comparative negligence of incurred risk under Indiana law.

Sauders does not apply here.  In *Sauders*, the court began by stating "[t]his case deals with the standard of liability of jailers for the suicide of a person in their custody." *Sauders*, 693 N.E.2d at 17.  In addition, that Supreme Court decided *Sauders* under the Indiana Tort Claim Act and not the Indiana Comparative Fault Statute.  The Court stated:

> [W]e hold that the decedent's act of suicide cannot be the basis for a finding of contributory negligence or incurred risk that would bar a plaintiff's claim for wrongful death of an inmate. To permit the suicide (or attempted suicide) to constitute a bar to recovery would eliminate altogether a claim for breach of a custodian's duty to take reasonable steps to protect an inmate from harm, self-inflicted or otherwise. Because the instructions in this case permitted such a result, we grant transfer and remand for a new trial consistent with this opinion.

*Id.*  Clearly, the *Sauders* court dealt with a particular type of plaintiff – an inmate who committed suicide – and a particular type of defendant – a jailer that has a specific custodial duty to its inmates.  The present case pits a motorist with a general duty of reasonable care against a pedestrian/motorist who also has a general duty of reasonable care.  Proof of McQuiston's alleged negligence would not cause his claims against Defendants' to "evaporate" as in *Sauders*.  Rather, proof of McQuiston's negligence would merely lower his damages depending on his degree of fault.  In *Sauders*, the court concluded that any evidence of comparative negligence, namely suicide or attempted suicide, would necessarily "eliminate altogether a claim for breach of a custodian's duty to

take reasonable steps to protect an inmate from harm, self-inflicted or otherwise." *Id.* Plaintiffs have cited no case law that extends *Sauders* to motor vehicle accidents, and this Court declines to do so here.  Plaintiffs' Motion in Limine to prohibit Defendants from raising affirmative defendants based upon Plaintiffs' alleged negligence is **DENIED**.

Next, Plaintiffs argue that the Court should bar any lay witness testimony about fault. Defendants contend that the investigating officer, Mark Carnell ("Officer Carnell), will offer lay testimony regarding fault that complies with Rule 701.  Rule 701 states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.  The 2000 Amendments added subsection "(c)" to Rule 701 "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing."  Fed. R. Evid. 701 cmt. 2000 Amendments.

Defendants contend that Officer Carnell is entitled to draw conclusions based upon his own perception from examining the scene of the accident and the parties' vehicles, the post-contact location of McQuiston's body, the location of the damage on the J.B. Hunt tractor trailer unit, and the lack of damage to McQuiston's car.  The Court acknowledges that Officer Carnell may testify to facts that he observed from the scene of the accident. This, of course, is the function of a lay witness.  However, Defendants seek to take Officer Carnell's testimony a step further and allow him to draw an opinion based upon those facts.  First, the jury is perfectly capable of drawing its own conclusions based upon the

facts presented to it by Officer Carnell. As a result, his opinion would not be "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed. R. Evid. 701. In addition, to the extent Officer Carnell relies on the knowledge he has gained through his work as a police officer to form his opinion, his opinion is necessarily based on "specialized knowledge," and therefore such testimony would violate Rule 701(c).

Neither Plaintiffs nor Defendants cite to any other potential lay witness that may testify as to fault. The Court limits its ruling to Officer Carnell. Plaintiffs' Motion in Limine regarding Officer Carnell's opinion on fault is **GRANTED**.[1]

Next, Plaintiffs argue that testimony regarding Officer Carnell's nonissuance of a traffic citation is not admissible evidence. The Court disagrees. Officer Carnell's nonissuance of a citation to Helms is merely a fact, and not an opinion, about which Officer Carnell is entitled to testify. Therefore, Plaintiffs Motion in Limine as to testimony regarding the nonissuance of a traffic citation is **DENIED**. However, he may not testify about why he chose not to issue a citation. Were Officer Carnell to officer such testimony, he would necessarily opine, either implicitly or explicitly, that Helms acted reasonably and was, therefore, not at fault. As stated above, Rules 701 and 702 of the Federal Rules of Evidence bar that testimony.

Finally, Plaintiffs seek an order "requiring any party seeking to impeach a witness by evidence of a prior conviction to notify the Court and opposing counsel prior to

---

[1] Plaintiffs also request that the Court bar Officer Carnell from offering expert testimony. *See* Dkt. No. 93. Defendants reply that they have no intention to offer Officer Carnell's testimony as expert testimony, but that his opinions are nonetheless admissible under Rule 701. The Court has already concluded that Officer Carnell may not opine as to fault under Rule 701. Because Defendants do not intend to ask Officer Carnell to provide expert testimony, Plaintiffs' Motion in Limine (Dkt. No. 93) is **DENIED**.

attempting such impeachment and outside the presence of the jury so that the convictions in question can be fully addressed under the requirements of [Federal Rule of Evidence] 609." Pls.' Br. at 9.  The Court notes that Plaintiffs do not cite any specific witness that may have criminal convictions.  The Court concludes that the facts as presented do not warrant such an order, although the Court cautions counsel to use common sense.  Should Plaintiffs have a specific witness in mind come the date of trial, the Court instructs counsel to re-assert its motion at that time.  Plaintiffs' Motion in Limine regarding this issue is **DENIED**.

## II.  DEFENDANTS' MOTIONS

### A.  MOTION TO EXCLUDE TESTIMONY OF RED OWEN

Plaintiffs plan to call Dwayne "Red" Owen ("Owen") to offer expert testimony regarding various aspects of the accident in question.  Owen's initial expert report contains sixteen "conclusions."  Defs.' Ex. 7, Dkt. No. 76(7).  Owen filed a supplemental expert report in which he provided five more "conclusions" based upon his review of the underlying facts of the accident and J.B. Hunt's training materials.  Defs.' Ex. 11, Dkt. No. 76(11).  The Court considers Defendants' arguments regarding particular subsets of these conclusions below.

### 1.  Conclusion Nos. 1 through 7

The first seven conclusions stem from Owen's analysis of the engine control module ("ECM") data from Helms' tractor.  According to Owen, the ECM data shows an approximate time span of sixteen and one half months for the "Trip."  Defs.' Ex. 7, Dkt. No.

76(7).  The "Trip" data indicates the highest speed obtained was 89 MPH.  *Id.*  In addition, Owen's report concludes that the monthly activity reports for March 2006 show 1,232 counts of speed greater than or equal to 66 MPH, and 100 counts greater than or equal to 71 MPH.  *Id.*  The monthly activity report for April 2006 shows 895 counts of speech greater than or equal to 66 MPH, and forty counts greater than or equal to 71 MPH.  *Id.*  Owen concludes that although J.B. Hunt had the ability to monitor driver performance by downloading the truck's ECM, "it is unlikely that J.B. Hunt is using the ECM data as an effective tool to monitor driver performance (safe driving strategy)."  *Id.*  Defendants argue that the Court should strike Owen's Conclusion Nos. 1 through 7 because the ECM data upon which Owen relies is not relevant to the subject accident.

First, as to Conclusion Nos. 1 and 6, Defendants argue that Owen admitted he is not an expert in driver training or the management of tractor trailer units and that, therefore, the Court should exclude his conclusions regarding J.B. Hunt's ability to monitor driver performance and its failure to use the ECM data as an effective tool to monitor driver performance.  The Court concludes that J.B. Hunt's ability to monitor driver performance and its alleged failure to use the ECM data as an effective tool to monitor driver performance is not relevant under Rule 401.  Plaintiffs claims against Defendants are predicated only on Helms' alleged negligence.  Plaintiffs have not asserted a claim for negligence based upon any failure to monitor Helms' performance or for inadequate training.  Rather, J.B. Hunt's potential liability stems exclusively from Helms' allegedly tortious acts, assuming those acts occurred during the scope of his employment. Therefore, testimony regarding J.B. Hunt's failure to use the ECM data to train or monitor Helms does not "hav[e] a tendency to make the existence of any fact that is of

11

consequence to the determination of the action more probable or less probable than it would be without evidence." Fed. R. Evid. 401. Therefore, Defendants' Motion to Exclude Owen's testimony regarding Conclusion Nos. 1 and 6 is **GRANTED**. Fed. R. Evid. 402.

The Court also concludes that Conclusion Nos. 2 through 5 of Owen's report are barred by Rule 404(b). Owen's report indicates that the ECM data shows that Helms traveled in speeds that exceeded 66 MPH and 71 MPH in March 2006, and 66 MPH and 71 MPH in April 2006. In addition, the report indicates that Helms' top speed during a sixteen and one half month time period was 89 MPH. However, Owen cannot testify that the ECM made these recordings the day of the accident while Helms drove the tractor. Defs.' Ex. 8, Dkt. No. 76(8), at 33. Indeed, Owen testified that he could not be sure whether these speeds were recorded in states that have speed limits up to and exceeding 70 MPH. *Id.* at 28, 32. The Court concludes that the only use for this evidence is to argue that because Helms had driven in excess of the speed limit in his past, he must have driven in excess of the speed limit on the day in question. Rule 404(b) bars such evidence. Fed. R. Evid. 404(b) ("Evidence of other . . . acts is not admissible to prove the character of a person in order to show action in conformity therewith."). Defendants' Motion to Exclude Opinion Nos. 2 through 5 is **GRANTED**.

Next, Defendants attack Owen's Conclusion No. 7 that states: "The investigating officer had the opportunity, but failed to download the ECM data in order to obtain "Hard Brake" (quick stop) information that may have been present at the time of the crash. This data (if present) would have documented such items as the truck's speed, brake, clutch, throttle, [and] cruise control status." Defendants assert that this opinion, which relies upon

"information that may have been present," is too speculative and therefore unreliable under Rule 702 and *Daubert*.

In response, Plaintiffs accuse Defendants of intentionally destroying the evidence that would have been available to Owen for analysis. Pls. Br. at 17. Plaintiffs argue "it is undisputed that the vehicle remained under the direct control and authority of J.B. Hunt at all time[s] following the April 21, 2006, incident and it was J.B. H[unt's] failure to preserve this critical evidence regarding the data created immediately preceding and contemporaneously with the collision in question." *Id.* Therefore, Plaintiffs assert that they should at least be able to explain to the jury what evidence would have been available but for the Defendants' destruction of that evidence so "that the jury can draw an adverse inference" against Defendants.

Conclusion No. 7 is about Officer Carnell's failure to record certain ECM data that may have been available and not about what the ECM data says about Helms' negligence. Officer Carnell's failure to record the ECM data is not relevant to the issue of whether or not Helms acted negligently. Further, to the extent Plaintiffs argue that Defendants failed to preserve the ECM data, the Court notes that Plaintiffs have not demonstrated that Owen has personal knowledge of the efforts taken by Defendants to preserve the ECM data and, therefore, he cannot opine about Defendants' alleged destruction of this evidence. The Court concludes that Owen's testimony should be limited to the type of "Hard Brake" evidence that is generally present on an ECM at the time of a crash. Owen may not testify about the fact that such information is not available in the present case, nor the reason why the information is unavailable.

The Court concludes that the parties should address the issue of whether or not the Court should allow Plaintiffs to offer testimony about Defendants' alleged failure to preserve the ECM data to allow the jury to draw an adverse inference in a separate motion. Were Plaintiffs allowed to present evidence that "Hard Brake" evidence would aid the jury in its decision regarding fault; that this evidence was likely produced by the ECM; that after the accident in question Defendants retained control of the ECM; and that now the ECM data is unavailable, the jury would naturally infer that Defendants destroyed the evidence. Yet, Plaintiffs have not established to the Court that: (1) J.B. Hunt had a duty to preserve the ECM data; or (2) that J.B. Hunt intentionally destroyed the ECM data. Without this showing, the Court questions whether or not any testimony regarding why the ECM data is unavailable would survive a Rule 403 attack.

Accordingly, Defendants' Motion to Exclude Owen's Conclusion No. 7 is **GRANTED**.

## 2. Conclusion No. 9

Conclusion No. 9 of Owen's report states: "The contact damage to the side of the truck tractor does not support the investigating officer's opinion of the truck tractor having swerved left prior to impact. The basis of his opinions is contrary to known vehicle dynamics." Defs.' Ex. 7, Dkt. No. 76(7). In the "Discussion" section of his report, Owen reasserts this conclusion and continues:

> A vehicle turning to the left will off-track to the inside of the turn, i.e. pedestrian contact damages was on the left side of the truck. If the right front of the left turning truck tractor misses the pedestrian, the remaining right side of the truck will also miss the pedestrian.

14

*Id.* Owen essentially opines that negative offtracking does not occur. Owen does not cite any research papers or data to support his conclusion that the right side of the truck would miss the pedestrian if the right front of the truck missed the pedestrian. Additionally, the Court notes that Owen does not have a bachelors, masters, or Ph.D. degree in any discipline. Rather, Plaintiffs contend that Owen's experience as an accident reconstructionist satisfies Rule 702 and *Daubert* with respect to this opinion.

The Court acknowledges that Rule 702 allows an expert to be qualified by experience. However, the opinion must be the product of reliable principles and methods. Fed. R. Evid. 702; *Ammons*, 368 F.3d at 816. Here, Owen does not explain the methodology he used to conclude that regular, as opposed to negative, offtracking occurred in the present case, nor does he rely upon any studies regarding offtracking. He essentially points to his experience and states: "That is enough." The Court disagrees. The party that proffers expert testimony bears the burden of proving that the opinion testimony satisfies Rule 702. *See, e.g.*, *U.S. v. Allen*, 207 F. Supp. 2d 856, 869 (N.D. Ind. 2002). If Owen wants to rely exclusively upon his own experience to form an opinion in this case, as opposed to Dr. Young who relies upon scholarship, his experience, and his technical educational background, Plaintiffs need to provide the specific knowledge that Owen gained from his experience that relates to offtracking. Further, Plaintiffs need to explain how Owen's applied that knowledge to the facts of this case to form his opinion. Owen's current report provides no connection between his knowledge and the underlying facts that would enable him to draw the conclusion that Officer Carnell's opinion, and the opinion of Dr. Young, "is contrary to known vehicle dynamics." Defs. Ex. 7, Dkt. No. 76(7). Therefore, Defendants' Motion to Exclude Conclusion No. 9 is **GRANTED**.

15

### 3.  **Conclusion No. 13**

Conclusion No. 13 of Owen's report states:

> There is no evidence to support the pedestrian stepping beyond the perimeter of the open door as depicted in the crash scene photographs.  An unlatched door can easily be blown open by a passing truck tractor/semi-trailer at highway speeds.  Testing performed at Ruhl Forensic, Inc. has documented wind gusts as high as 20 MPH in close proximity to a passing semi.

Defs.' Ex. 7, Dkt. No. 76(7).

The Court concludes that Owen's Conclusion No. 13 does not satisfy Rule 702 and

*Daubert*.  In his deposition, Owen states that, in formulating this opinion, he relied upon

tests performed by Dr. Strauss at Ruhl.  He later made the following admissions:

- That none of the tests that Dr. Struass performed resulted in a car door being blown open;

- that none of Dr. Strauss' studies involved a disabled vehicle on the side of the road being passed by a tractor trailer in the adjacent travel lane;

- that Owen had not personally performed any tests to see what happens to an open car door when a tractor trailer passes by in an adjacent travel lane;

- that Owen is not aware of any tests that have been performed using that scenario;

- that Owen has never personally seen an unlatched door blown open by a passing semi.

Defs. Ex. 8, Dkt. No. 76(8).  Based upon these admissions, the Court concludes that

Owen's opinion that "[a]n unlatched door can easily be blown open by a passing truck

tractor/semi-trailer at highway speeds" is not "based upon sufficient facts or data" and is

therefore speculative and unreliable.  Fed. R. Evid. 702; *Ammons*, 368 F.3d at 816.

Because Owen cannot explain how the door became fully extended, his opinion that there

16

is "no evidence to support the pedestrian stepping beyond the perimeter of the open door as depicted in the crash scene photographs" is speculative at best.  Therefore, Defendants' Motion to Exclude Owen's Conclusion No. 13 is **GRANTED**.

### 4.  <u>Conclusion Nos. 1 through 5 of Owen's Supplemental Report</u>

In his supplemental report, Owen concludes that "James Helms failed to follow J.B. Hunt Transport's safety training[,]" and then proceeds to list five separate training rules or policies that Helms allegedly failed to follow.  Defendants argue the Court should exclude these opinions because Owen admitted he is not an expert in driver training or in the management of tractor trailer drivers by trucking companies.  Plaintiffs assert that Owen will not testify that J.B. Hunt's training program was deficient or negligent.  Rather, Plaintiffs intend to call Owen to explain what J.B. Hunt's safety training instructed Helms to do when faced with a situation similar to what occurred in the underlying accident; the purposes of the safety training; and how the procedures contained within that training, if followed, could have prevented the collision that forms the basis of this litigation.  Pls.' Br. at 15-16. Plaintiffs argue that Owen's experience and training qualify him to testify to these issues.

The Court concludes that Owen's opinion regarding whether or not Helms' actions violated J.B. Hunt's training policies will not "assist the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702; *see Ammons v*, 368 F.3d at 816.  The jury is quite capable, after hearing testimony about Helms' actions and J.B. Hunt's training materials, of drawing its own conclusion about whether or not Helms contradicted the training policies.  Further, Owen's opinion about whether or not Helms' "could have" avoided collision with McQuiston had he followed the training policies is not

properly before the Court in Defendants' Motion to Exclude.   Therefore, Defendants' Motion to Exclude Owen's Opinions in his supplemental expert report is **GRANTED**.

## B.  MOTION TO STRIKE EXPERT REPORT OF DR. BROKAW

Defendants contend that Plaintiffs failed to comply with of the Federal Rules of Civil Procedure Rule 26(a)(2)(B) ("Rule 26(a)(2)(B)"), which requires an adverse party to disclose a written expert report, when they filed a "purported expert report" of Dr. David Brokaw ("Dr. Brokaw"), after the filing deadline of March 20, 2008.  *See* Dkt. Nos. 78; 112(2).  Other than Dr. Brokaw's observations, the report contains impairment ratings based upon Dr. Brokaw's observations and the American Medical Association's Guide to Evaluation of Permanent Impairment, 5th Edition, Chapters 15 and 17.  Dr. Brokaw also concludes that McQuiston may need some long term care.  Defendants request that the Court strike the report and exclude Dr. Brokaw's testimony as an expert witness.

Plaintiffs argue that the document to which Defendants object was created in the normal course of business through Dr. Brokaw's treatment of McQuiston as his treating physician and that, therefore, it is not an expert report.  Additionally, Plaintiffs cite an order written by Magistrate Judge Baker, in which he concluded that a Rule 26(a)(2)(B) report is not required for an injured parties' treating physician where the nature of the physician's opinion derives specifically from personal knowledge acquired through the course of treatment.  *Martin v. CSX Transportation, Inc.*, 215 F.R.D. 554, 557 (S.D. Ind. 2003).  Magistrate Judge Baker opined:

> It is within the normal range of duties for a health care provider to develop opinions regarding causation and prognosis during the ordinary course of an examination.  To assume otherwise is a limiting perspective, which narrows

the role of a treating physician.  Instead, to properly treat and diagnose a patent, the doctor needs to understand the cause of a patient's injuries.  As such, a physician 'whose proposed opinion testimony will come from his knowledge acquired as a treating physician[] is *not* someone from whom a Rule 26(a)(2)(B) report is required.'  *Sircher v. City of Chicago*, 1999 WL 569568, *2 (N.D. Ill. 1999) (emphasis in original).

*Id.* (citations omitted).

The Court agrees with Magistrate Judge Baker's reasoning and concludes that Plaintiffs did not violate Rule 26(a)(2)(B) in the instant case.  The Court notes that the parties do not dispute that Plaintiffs disclosed Dr. Brokaw as an expert witness and that Dr. Brokaw was McQuiston's treating physician for the injuries incurred in the accident at issue. In addition, Dr. Brokaw based his opinions about permanent impairment ratings and the potential need for long term care on information gathered and observations made during his treatment of McQuiston.  Therefore, this is not a situation where a treating physician relies upon information gathered ex parte from the expert's treatment of the patent.  *See Leaf v. Cottey*, Cause No. 1:02-cv-1433, 2006 WL 91354, at *2n.1 (S.D. Ind., Jan. 12, 2006).  Although Dr. Brokaw consulted the AMA Guidelines, a patient would expect his or her doctor to consult such documents and relay that type of information as a part of that doctor's treatment of the patient.  Accordingly, Defendants' Motion to Strike Expert Report of Dr. Brokaw is **DENIED**.

## C.  MOTION IN LIMINE

Defendants' Motion in Limine address multiple subject matters.  First, Defendants seek an order that prohibits Plaintiffs from "introducing into evidence or conveying to the

jury in any manner the relative economic or financial status of the Defendants." Defs.' Br. at 1. In addition, Defendants request that the Court bar any testimony regarding its liability insurance coverage. Plaintiffs do not respond to this issue in their brief. The Court concludes that any testimony regarding Defendants' worth would not provide the jury with evidence relevant to its task of determining whether a duty was breached. *See, e.g. Igo v. Coachman Indust., Inc. (Sportscoach)*, 938 F.2d 650, 652-53 (6th Cir. 1991). The Court also concludes that Plaintiffs are barred from mentioning Defendants' liability insurance coverage. *See* Fed. R. Evid. 411. Defendants' Motion in Limine as to these issues is **GRANTED**.

Next, Defendants argue that Plaintiffs should be prohibited from suggesting to the jury that this litigation is their only opportunity for compensation because such a suggestion would be "irrelevant to the issues the jury must decide in this case and may unfairly arouse the jury's sympathy for the Plaintiffs." Defs. Br. at 2. The Court disagrees and concludes that Plaintiffs are entitled to mention the fact that this litigation constitutes McQuiston's only opportunity for reimbursement for his injuries. Defendants' Motion in Limine as to this issue is **DENIED**.

Next, Defendants argue that the Court should bar testimony from McQuiston's surgeon regarding McQuiston's work life expectancy or life expectancy and that McQuiston lost wages or will lose wages in the future because of his injuries. The Court agrees and concludes that Plaintiffs have not demonstrated that Dr. Brokaw has the requisite expertise in order to form an opinion on McQuiston's future earning capacity. Defendants' Motion in Limine as to this issue is **GRANTED**.

Defendants also argue that the Court should bar Plaintiffs from "offering testimony that involves speculation as to medical issues [because] Plaintiffs are not physicians and do not have the requisite knowledge to discuss medical causation or the impact of a medical diagnosis on McQuiston's ability to work in the future." Defs.' Br. at 5. Initially, the Court notes that "[a] witness does not need to be a doctor to discuss his or her health in general terms." *Collins v. Kibort*, 143 F.3d 331, 337 (7th Cir. 1998). However, McQuiston cannot opine on medical causation or the impact of Dr Brokaw's medical diagnosis on his ability to work in the future because those opinions would necessarily have to be "based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Therefore, Defendants' Motion in Limine related to Plaintiffs' testimony about "medical causation or the impact of a medical diagnosis on Matthew McQuiston's ability to work in the future or on Matthew McQuiston's potential disability" is **GRANTED**.

In their Motion in Limine, Defendants reassert the arguments they made in their Motion to Exclude Testimony of Red Owen. For the reasons stated above, Defendants' Motion in Limine regarding Owen's testimony is **GRANTED**.

Next, Defendants argue that the Court should exclude J.B. Hunt's and Helms' employment and training files from evidence as irrelevant to the claims asserted by Plaintiffs. However, the training files are not entirely irrelevant. Plaintiffs seeks to demonstrate that Helms was negligent in the manner in which he operated the semi-tractor trailer on the day of the incident by, in part, showing that Helms failed to follow J.B. Hunt's instructions to avoid collisions provided in its training materials. Therefore, the Court concludes that these materials are relevant and that any potential prejudice to the

Defendants based upon this evidence does not substantially outweigh its probative value. *See* Fed. R. Evid. 403.  Defendants' Motion in Limine as to this issue is **DENIED**.

Next, Defendants seek an order that bars "any testimony or evidence regarding any attempts to negotiate a settlement of this matter."  Defs.' Br. at 10.  Defendants' Motion in Limine as to this issue is **GRANTED**.  *See* Fed. R. Evid. 408.

Finally, Defendants seek an order that excludes the following four groups of evidence:

1. Any testimony, evidence or reference to the fact that Defendants made an objection to certain discovery or asserted a claim of privilege during pre-trial proceedings in this case.

2. Any testimony, evidence or reference to the fact that Defendants failed to call any witness equally available to all parties in this case.

3. Any testimony, evidence or reference to the existence or filing of this motion in limine, or to the fact that Defendants sought to exclude evidence, or to any ruling on the motion in limine by the Court.

4. Any testimony, evidence or reference to any prior or subsequent accidents or incidents, criminal, criminal traffic, traffic charges, arrests or other prior "bad acts" that might arguably be attributed to the Defendants.

Defendants' Motion in Limine as to this evidence is **GRANTED**.

## D. MOTION FOR SEPARATION OF WITNESSES

Plaintiff having filed no objection, Defendants' Motion for Separation of Witnesses is **GRANTED**.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court rules on Plaintiffs', Matthew McQuiston and Joanna McQuiston, and Defendants, James K. Helms and J.B. Hunt Transport, Inc., pretrial motions as follows:

1.  Plaintiffs' Motion in Limine (Dkt. No. 90) is **GRANTED in part and DENIED in part**.

2.  Plaintiffs' Motion to Exclude Expert Testimony of Cline Young (Dkt. No. 92) is **GRANTED in part and  DENIED in part**.

3.  Plaintiffs' Motion in Limine to Exclude Opinion Testimony of Carnell (Dkt. No. 93) is **DENIED**.

4.  Defendants' Motion to Exclude Testimony of Plaintiffs' Expert (Dkt.No. 75) is **GRANTED**.

5.  Defendants' Motion to Strike Expert Report of Dr. Brokaw (Dkt. No. 78) is **DENIED**.

6.  Defendants' Motion in Limine (Dkt. No. 84) is **GRANTED in part and DENIED in part**.

7.  Defendants' Motion for Separation of Witnesses (Dkt. No. 109) is **GRANTED**.

IT IS SO ORDERED this 4th day of March, 2009.


LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana


Distribution attached.

23

Distributed to:

William Frederick Conour
CONOUR LAW FIRM, LLC
wfc@tortsurfer.com

Timothy Francis Devereux
CONOUR LAW FIRM, LLC
tfd@tortsurfer.com

Keith A. Gaston
CRUSER, MITCHELL & GASTON, LLC
kgaston@cmlawfirm.com

Gregory A. Hubbard
CRUSER, MITCHELL & GASTON, LLC
ghubbard@cmlawfirm.com

Douglas J. May
LAW OFFICES OF DOUGLAS MAY
625 Eden Park Drive, Suite 510
Cincinnati, OH 45202